UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 45-01 |
| v. | Judge Elaine E. Bucklo |
| ANTONIO EDWARDS, also known as "Rayduce Rashad", and "Rodney Bell" | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR NEW TRIAL**

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant's motion for new trial. Dkt. 472. The government respectfully requests that the motion be denied.

**I.    Background**

On April 23, 2019, a grand jury returned a superseding indictment against defendant, Antonio Edwards, charging him with conspiracy to obstruct, delay, and affect commerce, and the movement of articles and commodities in commerce, by robbery (Count One); robbery (Counts Two, Six, and Eight); and brandishing a firearm during and in relation to a crime of violence (Counts Seven and Nine). Dkt. No. 252.

More specifically, the superseding indictment alleged that beginning no later than March 29, 2017, defendant, along with co-defendants Andrew McHaney and James Bates, and others known and unknown, engaged in a conspiracy to rob a series of cellular telephone stores (Count One). On March 29, 2017, defendant, McHaney,

and their co-conspirators robbed a T-Mobile store in Chicago (Count Two). Less than a month later, on April 25, 2017, defendant and his co-conspirators robbed a Verizon store in Waukegan, and during this robbery, defendant brandished a firearm (Counts Six and Seven). Five days later, defendant, Bates, McHaney, and their co-conspirators robbed an AT&T store in Bradley, and during the robbery, defendant again brandished a firearm (Counts Eight and Nine).

On January 23, 2020, defendant pleaded guilty to Counts Two and Eight—the Chicago and Bradley robberies. Dkt. No. 359. On February 24, 2020, defendant pleaded guilty to Count One—the conspiracy. Dkt. No. 382. From February 25, 2020, through February 28, 2020, the Court held a trial on the remaining counts—Counts Six, Seven, and Nine: the Waukegan robbery, the § 924(c) charge associated with the Waukegan robbery, and the § 924(c) charge associated with the Bradley robbery. Dkt. Nos. 384, 386, 388, 390.

At trial, the government's evidence included testimony from two part-owners and an employee of the Waukegan Verizon Store, an employee of the Bradley AT&T Store, an employee of the Chicago T-Mobile Store, an Illinois State Police Trooper, an Illinois State Police Crime Scene Investigator, an ATF firearms expert, an FBI Digital Examiner, two FBI Special Agents, one of whom was a cell site expert, a cooperating co-defendant, and numerous exhibits including surveillance video recordings, cell site data, cell phone records and extraction reports, records from Facebook, photographs, clothing, and cell phones.

In addition, the government admitted evidence of the March 29, 2017, robbery of the T-Mobile store in Chicago—the robbery underlying Count Two—in order to prove identity, namely, that defendant committed the Waukegan robbery charged in Count Six using the same *modus operandi* that defendant also used to commit the Chicago robbery charged in Count Two. The government also argued that evidence that defendant committed the Bradley robbery charged in Count Eight was proof of identity—again, through *modus operandi*—that defendant committed the Waukegan robbery.[1]

On February 28, 2020, the jury found defendant guilty on all remaining Counts (Counts Six, Seven, and Nine). Dkt. No. 390. Defendant now moves this Court to grant a new trial. The Court should deny this motion.

## II. Legal Standard

A court may vacate a judgment and grant a new trial upon a defendant's motion "if the interest of justice so requires." Fed R. Crim. P. 33; *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012). A new trial is in the interest of justice where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.3d 466, 470 (7th Cir. 1989).

---

[1] At trial, the government admitted evidence of the April 30, 2017, robbery in Bradley (Count Eight), including defendant's guilty plea to that charge, in order to prove Count Nine of the superseding indictment. Such evidence was direct proof of the offense charged in Count Nine, which required the government to prove that defendant brandished a firearm during and in relation to a crime of violence, namely, the Bradley robbery. For that purpose, therefore, evidence of the Bradley robbery did not implicate Rule 404(b).

"[A] defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). Rule 33 motions are generally disfavored and courts should only grant them in "the most extreme cases." *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (internal marks omitted). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (internal marks omitted). While the court has broad discretion in ruling on a motion under Rule 33, the Seventh Circuit has cautioned:

> The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable…The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand…Motions for new trial based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really exceptional case.

*United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (internal marks omitted).

## III. Argument

The defendant argues that the Court should grant a new trial for the following reasons: (1) the Court erred in allowing use of other crimes evidence under Rule 404(b) as evidence of *modus operandi*; (2) the Court erred in denying "the jury's note requesting a transcript of the testimony of Jorge Acosta" and defendant's subsequent request to provide that transcript[2]; (3) the Court erred in allowing the use of a Glock

---

[2] The jury never requested a transcript of Jorge Acosta's testimony; rather, the jury sent a note to the Court asking, "During the trial, did Diego [Acosta] identify Antonio Edwards at the Waukegan Verizon store." TT at 519.

handgun as demonstrative evidence on the issue of whether the defendant was armed with a real handgun; and (4) the Court erred in the use of a confusing jury instruction, specifically Government Instruction No. 27. Def. Mot. at 2. Each of these arguments is without merit and defendant's motion should be denied.

### A.   The use of other crimes evidence under Rule 404(b) was proper as evidence of *modus operandi*

The Court's admission of evidence of "other acts," namely, defendant's robberies of the Chicago T-Mobile store and the Bradley AT&T store, in order to prove defendant's robbery of the Waukegan Verizon store was proper. This evidence was admissible under Federal Rule of Evidence 404(b) because evidence of the Chicago and Bradley robberies was offered for a relevant, non-propensity purpose—to prove defendant's identity by demonstrating his *modus operandi* in conducting robberies with his crew.[3] The consistency of the clothing worn, the pattern of entering each store, of waiting for the store to be clear of customers, of additional offenders entering, pulling a gun, announcing a robbery, locking the front door, leading employees to the rear of the store, demanding the employees open a safe, taking or attempting to take cash, and fleeing through the rear of the store, constituted highly probative *modus operandi* evidence.

Rule 404(b)(1) prohibits the use of "other act" evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *United States v. Brewer*, 915

[3] As referenced above, in footnote no. 2, evidence of the Bradley robbery was also admissible for purposes of proving the § 924(c) count associated with that robbery.

5

F.3d 408, 415 (7th Cir. 2019). But Rule 404(b)(2) provides a non-exhaustive list of other purposes for which such evidence is admissible. It states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b)(2). *See also Brewer*, 915 F.3d at 415 (explaining that Rule 404(b)(2) permits the introduction of other act evidence to prove identity and *modus operandi*) (citing *United States v. Carson*, 870 F.3d 584, 599 (7th Cir. 2017)); *United States v. Taylor*, 522 F.3d 731, 734-36 (7th Cir. 2008) (evidence of other bad acts is admissible so long as the evidence is not introduced to show the defendant's bad character).

In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (*en banc*), the Seventh Circuit "set the roadmap for determining which camp a particular piece of other-act evidence falls into." *Brewer*, 915 F.3d at 415. Under *Gomez*, "after a Rule 404(b) objection, the proponent of the other-act evidence must demonstrate that the evidence is relevant to a legitimate purpose 'through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.'" *Id*. (quoting *Gomez*, 763 F.3d at 860). "If the proponent does so, the district court must then use Rule 403 to determine 'whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice,' taking into account 'the extent to which the non-propensity fact for which the evidence is offered actually is

at issue in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860); *see also United States v. Thomas*, 897 F.3d 807, 813 (7th Cir. 2018).

The Seventh Circuit has repeatedly affirmed the admission of *modus operandi* evidence pursuant to Rule 404(b). In *Brewer*, for example, the Seventh Circuit affirmed the district court's decision to admit evidence at trial, pursuant to Rule 404(b), not just of the of three bank robberies for which defendant had been charged, but of two earlier bank robberies defendant had committed, where the government offered evidence of the earlier bank robberies "to prove identity through *modus operandi*." 915 F.3d at 415-16. The appeals court agreed with the district court's conclusion that the government had provided "propensity-free reasoning" for that purpose:

> That Brewer lingered around banks in Ohio and California [the uncharged, earlier robberies] just before they were robbed by a person clothed head to toe, who used a stick and a give-me-the-cash note, makes it more likely that he was the individual recorded at the Indiana banks [the charged robberies] just before they were robbed by a person who dressed similarly and used similar methods. That is so not because Brewer has a propensity for committing crimes, or even bank robberies, but because he and his partner had established an idiosyncratic way of doing so.

*Id.* at 415. The propensity-free reasoning offered by the government, and accepted by the courts, in *Brewer* was precisely the same propensity-free reasoning that the government offered here regarding the admissibility of evidence concerning the Chicago and Bradley robberies under Rule 404(b).[4]

---

[4] The Seventh Circuit has approved the use of other act evidence as evidence of identity through *modus operandi* in other cases as well. *See, e.g.*, *United States v. Price*, 516 F.3d 597,

In this case, the *modus operandi* among the robberies is striking. In each robbery:

- two to three people enter a cell phone store;

- offenders wear hats or hoodies to disguise their identities and wear gloves or used shirt sleeves to avoid leaving fingerprints;

- one offender initially interacts with an employee;

- the other offenders wait until the store is devoid of customers;

- one offender brandishes a firearm and announces a robbery;

- another offender locks the front door to the store;

- employees are led to the back of the store at gunpoint;

- one of the employees is forced to open a store safe;

- the other employees are held at gunpoint in the back of the store;

- after gaining access to the store safe, cell phones are loaded into plastic garbage bags; and

- the offenders escape through a back door of the store.

These crimes certainly "bear a singular strong resemblance" to each other. *Gomez*, 763 F.3d at 854. The specific details are more than "sufficiently idiosyncratic to permit an inference of pattern." *Id*. While there may be minor dissimilarities among the robberies, those differences do not undermine the distinct resemblance among the robberies. *See Brewer*, 915 F.3d at 415-16 (explaining that the Seventh Circuit has "considered *modus operandi* to mean a distinctive—not identical—

---

604 (7th Cir. 2008); *United States v. McGuire*, 627 F.3d 622, 626-27 (7th Cir. 2010); *United States v. Smith*, 103 F.3d 600 (7th Cir. 1996); *United States v. Powers*, 978 F.2d 354, 361-62 (7th Cir. 1992); *United States v. Khorrami*, 895 F.2d 1186, 1194-96 (7th Cir. 1990).

method of operation" and finding a pattern of robberies sufficiently similar where defendant lingered around banks dressed in head-to-toe clothing and used a stick and a note demanding cash to warrant admission of evidence of uncharged robberies as *modus operandi* evidence); *see also Carson*, 870 F.3d at 599; *United States v. Robinson*, 161 F.3d 463, 468-69 (7th Cir. 1998); *United States v. Hudson*, 884 F.2d 1016, 1021 (7th Cir. 1989).

With respect to the Rule 403 analysis where defendant's sole defense was identity, evidence that defendant committed the Chicago, Waukegan, and Bradley robberies using the same *modus operandi* was extremely probative on the central issue decided by the jury and outweighed any prejudice that defendant faced from admission of this evidence. In *Gomez*, 763 F.3d at 857, the Seventh Circuit noted that the degree to which a fact is contested matters to the fact-specific balancing called for under Rule 403, explaining that the probative value of the evidence increases based on "the degree to which the non-propensity issue actually is disputed." Moreover, "when other acts bear a striking similarity to the acts with which the defendant has been charged, this court has noted that the similarity 'increases the probity of that evidence and actually decreases the potential risk of unfair prejudice.'" *United States v. Anifowoshe*, 307 F.3d 643, 647-48 (7th Cir. 2002) (quoting *United States v. Paredes*, 87 F.3d 921, 925 (7th Cir.1996)).

Here, the probative value was high because the Waukegan robbery had to be proven in large part through circumstantial evidence and, as already noted, identity was strongly contested by defendant. With respect to the Waukegan Verizon store

9

robbery, the victim employees were unable to identify defendant as the person who robbed the store and brandished the firearm and the only witness who testified to this fact was the cooperating defendant, who was placed at the scene by his own word. The government did corroborate the cooperating defendant's testimony with circumstantial evidence, including cellular location information from defendant's phone, and videos from the Waukegan robbery that depicted an individual with similar features, build, and gait to that of defendant as he appeared in the Chicago and Bradley surveillance videos, to prove that defendant committed the Waukegan robbery. In this type of case, *modus operandi* was extremely probative.

Finally, any prejudice to defendant was diminished through a limiting instruction. Specifically, in jury instructions 13 and 27, the Court directed the jurors to consider the evidence of the Chicago and Bradley robberies, in connection with the Waukegan robbery, only if they first found that defendant likely participated in the Chicago and Bradley robberies. If so, the instruction continued, jurors could use the evidence of the Chicago and Bradley robberies to help them decide defendant's identity and *modus operandi* during the Waukegan robbery. *See Brewer*, 915 F.3d at 416 (approving the use of such an instruction). When coupled with the proper limiting instructions, which were given during final jury instructions 13 and 27, any unfair prejudice stemming from this evidence was far less than its immense probative value. *See Gomez*, 763 F.3d at 860 (An "[a]ppropriate jury [instruction]" that "may help to reduce the risk of unfair prejudice inherent in other-act evidence.").[5]

---

[5] As was the case in *Brewer*, the government did not seek to admit evidence that defendant already has pleaded guilty to the Chicago robbery (Count Two). 915 F.3d at 416. The

Nor was defendant unfairly prejudiced by the non-propensity aspects of this evidence. The facts of the Chicago and Bradley robberies were no more incendiary than the allegations relating to the Waukegan robbery that the jury already heard about, and the probative value of the "other act" evidence substantially outweighed any unfair prejudice. Therefore, Rule 403 did not preclude its admission.

## B. The Court did not err in denying defendant's request to provide a transcript of the testimony of Diego Acosta

The Court's denial of defendant's request to provide a transcript of the testimony of Diego Acosta[6] was proper. It is well settled that the decision of whether to comply with the jury's request for the transcript of a witness' testimony is one "purely within the trial court's discretion." *United States v. Howard*, 80 F.3d 1194, 1202 (7th Cir. 1996) (quoting *United States v. Keskey*, 863 F.2d 474, 476 (7th Cir. 1988)). A district court's decision on whether to provide a transcript to the jury is proper "when it is based on legitimate reasons such as the trial's brevity, the ability of jurors to take notes, the relative clarity of the witness's testimony, and the overall simplicity of the issues before the finders of fact. *United States v, Davis*, 93 Fed. Appx. 924 (7th Cir. 2004); *see also United States v. Howard,* 80 F.3d 1194, 1202 (7th Cir.

---

government admitted evidence that defendant pleaded guilty to the Bradley robbery (Count Eight), as defendant had elected to proceed to trial on the § 924(c) charge associated with that robbery. Defendant's guilty plea with respect to the Bradley robbery was an admission as to his culpability for the related crime of violence, which was an element of Count Nine that the government needed to prove. In this context, the probative value of defendant's guilty plea outweighed any prejudicial effect, particularly in light of the fact that defendant did not contest that he committed the Bradley robbery and only contested that he brandished a firearm during its commission.

[6] In defendant's motion for a new trial, defendant mistakenly references Jorge Acosta, instead of Diego Acosta.

1996) (affirming a district court's decision not to provide a transcript during jury deliberations where the trial lasted less than two days and the testimony was "fairly straightforward").

In this case, testimony only occurred over the course of two and a half days[7], the jurors' memory of Diego Acosta's testimony should have been sufficiently fresh, as it had occurred only three days prior during the first afternoon of the trial, and the jury was permitted to take notes. Further, a review of the record reveals that Diego Acosta's testimony was relatively straightforward and involved a description of the robbery and the offenders, and the identification and utilization of videos and photographs of the offense.

Most importantly, in the instant case, the jury never requested a transcript of Diego Acosta's testimony; rather, the jury sent a note to the Court asking, "During the trial, did Diego [Acosta] identify Antonio Edwards at the Waukegan Verizon store." TT at 519. In considering the jury's request, the Court noted that this was "clearly a question of fact for [the jury] to decide." *Id*. at 523. It was at this point that defendant's trial counsel—*not the jury*—proposed "offering them [the jury] a rough transcript." *Id*. The Court properly denied this request, agreeing with the government that this was an issue of fact for the jurors to decide. *Id*. at 526. The Court thereafter sent back the following response to the jurors' question: "Thank you for your note. In

---

[7] Although the trial encompassed four days, the first day of the trial involved jury selection in the morning followed by opening statements and the government's first witnesses after lunch. Evidence and testimony were presented on days two and three of the trial, while day four consisted on closing arguments and jury deliberations.

answer to your question, please rely on your collective memory of the testimony." *Id*.

In considering the jury's question, it was reasonable to instruct the jurors to rely on their own collective recollection as opposed to providing a transcript that the jurors had not even requested. Thus, under these circumstances, requiring the jury to rely on its collective memory was appropriate, defendant was not prejudiced, and defendant's argument should be denied.

### C. The Court properly allowed the Government to utilize a Glock handgun as demonstrative evidence

Defendant's third contention is that it was error to allow the use of a gun as demonstrative evidence, alleging that the gun may have confused the jury as to whether the firearm was the actual gun involved in the offenses charged. Def. Mot. at 6. Defendant's argument should fail, however, where the gun was admitted for demonstrative purposes only, in order to explain the general operation of a real firearm and where its use as a strictly demonstrative exhibit was made clear to the jury.

Rule 611(a) of the Federal Rules of Evidence declares that the "court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and the presentation effective for the ascertainment of the truth . . . ." Demonstrative aids are regularly used to clarify or illustrate testimony. *United States v. Salerno*, 108 F.3d 730, 744 (7th Cir. 1997) *See, e.g., Roland v. Langlois*, 945 F.2d 956, 963 (7th Cir. 1991) (admitting life-sized replica of amusement park ride into evidence); *United States v. Towns*, 913 F.2d 434, 445-46 (7th Cir. 1990) (admitting ski mask and gun into evidence for

demonstrative purpose of providing examples of the mask and gun used at a bank robbery).

In the instant case, the government called ATF Special Agent Christopher Labno to testify regarding his review of certain video surveillance evidence pertaining to the use of firearms in this case. TT 390-410. In addition to testifying about his training, background, and experience, Special Agent Labno testified regarding the traits and characteristics of semi-automatic handguns, how they are used, and the differences between semi-automatic handguns, Airsoft guns, and BB guns. *Id*. 390-406. Special Agent Labno also discussed his review of video surveillance footage from this case, how the metal and two-tone coloration of the firearms in the video surveillance footage was consistent with real firearms, and how the "racking" of a firearm, as observed in the video surveillance footage, was generally indicative of a real semi-automatic handgun, as opposed to an Airsoft gun or BB gun. *Id*. 408-410.

More specifically, as it pertains to defendant's motion, during his testimony Special Agent Labno utilized a prop firearm—Government's Exhibit 511[8]—to discuss the parts and mechanics of a firearm and how a gun works. *Id*. 400-405. When the government sought permission to utilize the prop firearm for demonstrative purposes only, there was no objection by defendant. TT at 401. In his motion for new trial, defendant purports concern that the prop firearm was prejudicial because it "may confuse the jury as to whether the gun is the actual gun involved instead of

---

[8] At trial, Government's Exhibit 511 was not admitted into evidence and was utilized specifically for demonstrative purposes only.

14

demonstrative evidence." Def. Mot. at 6. However, this concern is belied by the record. Specifically, on two occasions during Special Agent Labno's testimony, it was established that the prop firearm was *not* the firearm utilized during the crimes in questions.

|  |  |
|---|---|
| Government: | I'm handing you what's been marked as Government Exhibit 511 for demonstrative purposes. Do you recognize this? |
| Agent Labno: | Yes |
| Government: | And what is this? |
| Agent Labno: | This is my -- a firearm that is issued by ATF. It's a Glock 19M pistol. It's a semi-automatic 9mm handgun |

TT at 401.

|  |  |
|---|---|
| Defense Counsel: | The firearm you were shown a moment ago, there wasn't any allegation that that firearm was involved in any -- in any robbery that Mr. Antonio Edwards is alleged to have been involved in, is there? |
| Agent Labno: | I have no knowledge of that, no. |

TT at 410.

As detailed above, not only was there no objection from defendant at trial as to the prop firearm being utilized as a demonstrative exhibit, the record is also clear that this firearm was *not* the actual gun used during the robberies in question. As such, the Court properly allowed the Government to utilize the Glock handgun as demonstrative evidence, there was no risk of confusing the jury or prejudicing defendant, and defendant's argument should be denied.

### D. The Court Properly Instructed the Jury

Defendant next argues that it was error for the Court to give Government Instruction No. 27 to the jury. Specifically, defendant argues "the instruction was

15

confusing in the statement that the defendant pled guilty to the offense, yet the jury must consider that it is more likely than not that the defendant participated in the Bradley robbery, an issue that was apparently resolved by a plea of guilty." Def. Mot. at 7. Defendant's argument, however, is without merit.

A district court's instructions to the jury must be correct statements of the law and supported by the evidence. *United States v. Perez*, 43 F.3d 1131, 1137 (7th Cir. 1994). Instructions should be looked at in their entirety and looked at for overall fairness and accuracy. *United States v. Dack*, 987 F.2d 1282, 1284 (7th Cir. 1993). Since the composition of jury instructions is not an exact science, many formulations may be adequate. *United States v. McNeal*, 77 F.3d 938, 944 (7th Cir. 1996). Deference is given to the district court's discretion in determining the specific wording of the instructions and will not overturn a conviction merely because the addition or removal of several words theoretically could have improved a defendant's chance of acquittal. *Id*. Reversal is necessary only if the jury's comprehension of the issues is so misguided that it prejudiced the party raising error, and the complaining party bears the burden of showing prejudice. *United States v. Dack, 987 F.2d at 1284.*

In the instant case, Government Instruction No. 27 read:

You have heard testimony and evidence that the defendant has pleaded guilty to the commission of the April 30, 2017 robbery of an AT&T store in Bradley, Illinois.

Before using this testimony and evidence, you must decide whether it is more likely than not that the defendant participated in the commission of this robbery. If you so find, you may consider this testimony and evidence to help you decide whether the defendant committed the crime charged in Count Nine of the indictment, which alleges that defendant

brandished a firearm during the commission of the April 30, 2017 robbery in Bradley.

You may also consider that evidence to help you decide the identity of participants in the charged April 25, 2017 robbery of a Verizon store in Waukegan, if you find that actions taken during the April 30, 2017 robbery are specific enough that they show a distinct method of operation that identifies the defendant as a participant in the charged April 25, 2017 robbery in Waukegan.

You may not consider the testimony and evidence regarding the April 30, 2017 robbery in Bradley for any other purpose. You may not assume that because the defendant committed the April 30, 2017 robbery in Bradley, he is more likely to have committed April 25, 2017 robbery in Waukegan and other crimes charged in the indictment.

Dkt. 387.

Here, the government initially notes that defendant did not object to this instruction during the instructions conference, although the instruction was discussed with the Court and the parties at length. TT at 437-38, 441-44. Specifically, when asked whether there was an objection, defense counsel stated, "I don't have any objection, your Honor, but I do agree it is confusing. I'm not sure that's it's prejudicial to -- I don't believe it's prejudicial to [defendant]."

Moreover, while this instruction was lengthy, it was, in fact, based upon and tracked Seventh Circuit Pattern Criminal Jury Instruction 3.11 (2012 ed.) (modified); see also *United States v. Brewer*, 915 F.3d 408, 418 (7th Cir. 2019). It clearly instructed the jurors, first, that they heard testimony and evidence that the defendant had pleaded guilty to the April 30, 2017 robbery of the AT&T store in Bradley and that they must decide whether it was more likely than not that the defendant took part in that Bradley robbery. Second, if they found that defendant

took part in the Bradley robbery, then the instruction was to serve two additional purposes: (a) to instruct the jurors that evidence of the Bradley robbery was admissible for purposes of proving the § 924(c) count associated with that Bradley robbery charged in Count Nine of the indictment; and (b) to prove defendant's identity in the April 25, 2017 Waukegan robbery by demonstrating defendant's *modus operandi* in conducting robberies with his robbery crew. Moreover, a limiting instruction was added to the final paragraph of this instruction to prevent any prejudice to defendant.

In the instant case, the jury's comprehension of the issues was not so misguided by the instruction in question that it prejudiced defendant. *Dack*, 987 F.2d at 1284. Thus, defendant's argument—that the instruction was confusing because the jury must consider that it is more likely than not that the defendant participated in the Bradley robbery even though they heard evidence that defendant had pled guilty to the offense—should be rejected where the instruction was properly given by the Court and did not result in prejudice to defendant. As such, defendant's argument should be rejected.

## IV.    Conclusion

Wherefore, the government respectfully requests that defendant's Motion for New Trial be denied.

<div style="margin-left:50%">

Respectfully submitted,
JOHN R. LAUSCH, JR.
United States Attorney

By:    *Aaron R. Bond*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
AARON R. BOND
KRISTEN TOTTEN
Assistant United States Attorneys
219 S. Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

</div>

Dated: January 20, 2021